JARED WEINSTOCK (SB# 252335)
jaredweinstock@gmail.com
750 N. San Vicente Boulevard
Los Angeles, CA 90069
Phone:  (310) 702-1224
Fax:  (215) 735-1175

J. CONOR CORCORAN, ESQUIRE (PA BAR ID. 89111) *(pro hac vice pending)*
conor@jccesq.com
LAW OFFICE OF J. CONOR CORCORAN, P.C.
1500 JFK Boulevard, Suite 620
Philadelphia, PA 19102
Tel: (215) 735-1135
Fax: (215) 735-1175
Counsel for Plaintiff

Attorneys for Plaintiff
SWEET CICELY DANIHER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SWEET CICELY DANIHER,

               Plaintiff,

    vs.

KORI RAE; PIXAR ANIMATION
STUDIOS; PIXAR TALKING PICTURES;
and WALT DISNEY MOTION PICTURES
GROUP,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.  20-cv-612**

**PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT AND VIOLATIONS OF 17 U.S.C. § 1202 et. seq., 17 U.S.C. § 106 et. seq., AND CAL. CIV. CODE § 987**

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

AND NOW comes Plaintiff, SWEET CICELY DANIHER, by and through her

undersigned counsel, Jared Weinstock, Esquire and the Law Office of J. Conor Corcoran, P.C.,

complaining of Defendants KORI RAE, PIXAR ANIMATION STUDIOS, PIXARD TALKING

PICTURES, and WALT DISNEY MOTION PICTURES GROUP (collectively, "Pixar"), and

respectfully requests this Honorable Court to enter judgment in her favor, and against

Defendants, and in support thereof alleges, upon information and belief, as follows:

## Jurisdiction and Venue

1.      The jurisdiction of this court is based upon 28 U.S.C. § 1400(a), in that Plaintiff is an

owner of a valid copyright which has been infringed upon by the unlawful acts of Defendants

herein, who reside and/or have regular and sustained contacts with, and are at all times relevant

herein conducting business in, the Northern District of California.

2.      Jurisdiction over this cause of action is also proper before this Court pursuant to 28 U.S.C.

§ 1331 as this copyright infringement civil action arises under the Constitution and/or laws of the

United States, and Title 17 of the United States Code in particular.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1400 and/or 28 U.S.C. §1391(b)(2)

in that a substantial part of the events giving rise to Plaintiff's claim for copyright infringement

occurred in the Northern District of California and in that Defendants have been creating,

broadcasting, advertising, selling, distributing and/or are about to distribute for publication a

certain infringing motion picture, titled "Onward," in the San Francisco area, throughout the

United States, and abroad.

4.      Venue is also proper in the Northern District of California pursuant to 28 U.S.C. §1391(c)

in that the Defendants reside and/or have substantial business contacts with the Northern District

of California as Defendants (or their agents) have been residing, creating, advertising,

distributing, and/or selling a certain infringing motion picture, titled "Onward," in the San

Francisco area, and throughout the United States and abroad.

## Parties

5.      Plaintiff Sweet Cicely Daniher is an adult individual and a locally based artist and

tattooist, and is a resident and citizen of the State of California, regularly conducting business at

Cyclops Tattoo, 513 Valencia Street, Suite 2, San Francisco, CA 94110, a tattoo shop in the Mission District of San Francisco that has operated since 1998.

6.      Defendant Kori Rae is an adult individual residing at 4478 Paradise Drive, Tiberon, CA 94920 and/or 825 Alvarado Street, San Francisco, CA 94114.  Defendant Kori Rae has unlawfully infringed Plaintiff's copyright in her creation, distribution, production, promotion, screening, publication, execution of licensing deals for and/or pending sale of movie tickets for a certain infringing motion picture, titled "Onward," as more fully set forth *infra*.

7.      Defendant Pixar Animation Studios is a California corporation located at 1200 Park Avenue, Emeryville, CA 94608, and is duly registered with the California Department of State as currently conducting business at that address, and has unlawfully infringed Plaintiff's copyright in its creation, distribution, production, promotion, screening, publication, execution of licensing deals for and/or pending sale of movie tickets for a certain infringing motion picture, titled "Onward," as more fully set forth *infra*.

8.      Defendant Pixar Talking Pictures is a California corporation located at 1200 Park Avenue, Emeryville, CA 94608, and is duly registered with the California Department of State as currently conducting business at that address, and has unlawfully infringed Plaintiff's copyright in its creation, distribution, production, promotion, screening, publication, execution of licensing deals for and/or pending sale of movie tickets for a certain infringing motion picture, titled "Onward," as more fully set forth *infra*.

9.      Defendant Pixar Animation Studios and Defendant Pixar Talking Pictures shall hereinafter be collectively referred to as "Defendant Pixar."

10.     Defendant Walt Disney Motion Pictures Group, Inc. (hereinafter "Walt Disney") is a California corporation located at 500 S. Buena Vista Street, Burbank, CA 91521, and is duly registered with the California Department of State as currently conducting business at that

COMPLAINT FOR DAMAGES,
DECLARATORY, AND INJUNCTIVE
RELIEF

address, and has unlawfully infringed Plaintiff's copyright in the creation, distribution,

production, promotion, screening, publication, execution of licensing deals for and/or pending

sale of movie tickets for a certain infringing motion picture, titled "Onward," as more fully set

forth *infra*, and/or is about to do so, as the scheduled opening of the motion picture "Onward" is

currently slated for March 6, 2020.

**Facts Underlying Infringement**

11.     The Plaintiff is an artist, photographer and tattooist in San Francisco, whose work is

regularly posted on her Instagram website (Instagram.com/sweettransam), the website for her

tattoo shop, Cyclops Tattoo (Cyclopstattoo.com), and two separate websites for a collection of

photographs, which the Plaintiff has taken, of random objects that look like unicorns

(iseeunicorns.blog, and instagram.com/sweetseesunicorns/).

12.     Over the past eighteen (18) years, and as a matter of artistic interest in particular, the

Plaintiff has regularly taken pictures of everyday things that look like unicorns, which have been

a mythological subject matter of interest to the Plaintiff since the days of her youth.

13.     For example, on or about February 21, 2014, the Plaintiff published a book of her

photographs, consisting of random objects that look like unicorns, which is called "I See

Unicorns," and which is available for purchase online at the following web address of

www.blurb.com/b/5105762-i-see-unicorns.

14.     At the risk of belaboring the point, the Plaintiff has had a real thing for unicorns, for a

very long time, and they have been a central theme and subject matter of her artistic work,

throughout the entirety of her career.

15.     At any and all times relevant hereinafter, and since January 19, 2014, the Plaintiff has also

owned a tremendously cool, dark blue and/or purple 1972 Chevrolet G10 van, with red shag

carpeting, red velour walls and seating, and a white shag carpet roof, and which came into her

possession in or around January 19, 2014.

16.     Since the time of its possession, the Plaintiff has joyously, proudly, and frequently posted pictures of the van on her aforementioned Instagram account, a selection of which are attached hereto and incorporated herein as <u>Exhibit A</u>.

17.     As is evident from the first Instagram photo in <u>Exhibit A</u>, dated January 19, 2014, since the time of the van's possession it was the publicly stated intention of the Plaintiff to paint a unicorn mural on the side of the van, exclaiming as she did, "Unicorn mural on the way!!"  *See* <u>Exhibit A</u>, Instagram post of 1/19/2014.

18.     The Plaintiff had an interest in painting a unicorn mural on the side of the van not only because of her lifelong artistic interest in unicorns, but also because her ex-husband had theretofore refused to allow her to do so.

19.     Accordingly, the Plaintiff's exercise of adorning her van with a unicorn mural was not only an effort at creating a public work of visual art, it was also a redemptive and validating act of recovery from toxic masculinity and her former marriage, as many works of art by female artists often are.

20.     Therefore, subsequent to her possession of the van in January 2014, the Plaintiff designed a unicorn mural for the side of her van, with tremendous specificity regarding the colors utilized and the shading thereof, the flowing locks of hair from the unicorn, the flashes of lightning, and a general outer space and mythological visual milieu.

21.     In or around the week of Thanksgiving 2014, the Plaintiff applied her aforementioned design for the unicorn mural to the side of her van.  *See* <u>Exhibit A</u>, Instagram post of 11/29/2014.

22.     And so, as set forth in the Instagram photo dated 11/29/2014 in <u>Exhibit A</u> (and in the accompanying photographs dated 8/10/2015, 1/3/2017, and 4/8/2017), the Plaintiff brought forth unto the world (or, at the very least, the streets of San Francisco) a mobile mural and/or a

COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF

superlative work of automotive art, with her very particular mural applied thereon, born of her

own creation and design, and which she thereafter christened as the "Vanicorn."

23.     Since its revelation to the public in November of 2014, the Vanicorn has been a very

popular piece of mobile, public art in San Francisco, and has enjoyed considerable press attention

from a number of news outlets, including but not limited to San Francisco Magazine, which

published a story on the Plaintiff and her van, complete with photographs detailing the

resplendent red interior, and the extraordinary exterior unicorn mural of the Vanicorn, in all its

glory, a true and correct copy of which is attached hereto and incorporated herein as Exhibit B.

24.     The photograph and story concerning the Plaintiff, and her Vanicorn, was published by

San Francisco Magazine on or about July 5, 2017.  *See* Exhibit B.

25.     Subsequent to the publication of Exhibit B, on September 4, 2018, the Plaintiff was

contacted by Jane Clausen, an employee/agent/servant of Defendant Pixar, who inquired about

renting the Plaintiff's Vanicorn for a social event taking place at Defendant Pixar's facility, a true

and correct copy of which is attached hereto and incorporated herein as Exhibit C.

26.     As set forth in Exhibit C, and on behalf of Defendant Pixar, Jane Clausen wrote:

> "Sweet Cicely,
>
> We just stumbled upon a badass photo of you and your amazing van in San Francisco Mag and shrieked with joy…I'm working on an event over here at Pixar Animation Studio next week, and was wondering if you'd be willing to rent us your Vanicorn for a couple of days.  I have no idea if you get inquiries like this ever, but it is incredibly perfect for the theme of the event we're working with – kind of a fantasy/rocker sort of thing.
>
> Would you let me know if you're open to this?  Of course, it would be in good hands – we would make it worth your while, take exquisite care of it and provide alternate transportation for you.
>
> Thank you so very much,
> Jane
>
> Production Office Manager
> Pixar Animation Company."

*See* Exhibit C.

27.      In the subsequent correspondence that followed between Jane Clausen of Defendant Pixar, and the Plaintiff, Ms. Clausen represented that the "event is a one day music festival/activity day for Pixar employees and families. **<u>Your van would just be a show piece and not used in any way other than a visual prop</u>**…Are you able to send me some additional photos of the van? We've only seen the side, which just blew us away!"  *See* <u>Exhibit C</u> (**emphasis added**).

28.      As set forth in averments 26 and 27, and by Ms. Clausen's own revelations therein, Defendant Pixar was clearly impressed by the Plaintiff's unicorn mural on the side of Plaintiff's Vanicorn.

29.      As set forth in averments 26 and 27, and by Ms. Clausen's own revelations therein, Defendant Pixar was only going to be using the Vanicorn for an "event" that consisted of "a one day music festival/activity day for Pixar employees and families" and that the Vanicorn would only be used as a "show piece" and a "visual prop" for that one day social event.  *See* <u>Exhibit C</u>.

30.      Jane Clausen of Defendant Pixar offered to provide a contract to the Plaintiff for renting the Vanicorn for the aforementioned "event" consisting of "a one day music festival/activity day for Pixar employees and families" and eventually prepared and transmitted a contract to the Plaintiff, which was signed by the Plaintiff and Defendant Pixar via James M. Kennedy, Senior Vice President of Business Strategy and Chief Legal Counsel to Defendant Pixar, a true, correct and redacted copy of which is attached hereto and incorporated herein as <u>Exhibit D</u>.

31.      <u>Exhibit D</u> is dated September 10, 2018, and sets forth that Defendant Pixar (defined therein as a Producer) would rent the Plaintiff's Vanicorn at a confidential rate per day "for Producer's rental of the vehicle(s)…in connection with the Pixar event, to be held on September 14, 2018 (the 'Production')."  *See* <u>Exhibit D</u>, ¶ preamble, p. 1.

32.      The Plaintiff and Defendant Pixar agreed that the "event" would take place on September 14, 2018, that the Plaintiff would provide the Vanicorn for preparation ahead of time on or about

September 12, 2018, and that the Plaintiff would pick up the Vanicorn on or about September 15, 2018, for a total of 3.5 days, in exchange for a confidential sum of money.  *See* Exhibits C and D; *see also* Invoice submitted by the Plaintiff at the request of Defendant Pixar for that confidential sum of money, a true, correct and redacted copy of which is attached hereto and incorporated herein as Exhibit E.

33.     To be clear, and as aforementioned in averment 27, Ms. Clausen represented to the Plaintiff that the Vanicorn would be used for an event limited to "a one day music festival/activity day for Pixar employees and families" and that the Vanicorn "would just be a show piece and not used in any way other than a visual prop" (*see* Exhibit C) and upon that representation, the Plaintiff and Defendant Pixar then signed a contract (Exhibit D), written by Defendant Pixar, which explicitly limited the lease of the Vanicorn "for Producer's rental of the vehicle(s)…in connection with the Pixar event, to be held on September 14, 2018 ('the Production').

34.     As set forth in Exhibit D, ¶ 5, entitled "RIGHTS," Defendant Pixar specifically tailored its limited rights in connection with its lease of the Vanicorn, limited as they were for "the Production" of the aforementioned one day music festival/activity day for Pixar employees and families only, and as further limited in the contract as "the Pixar event, to be held on September 14, 2018," (and as aforementioned in averments 28 and 30 *supra* and defined in Exhibit D, ¶ preamble), to wit:

> "All rights of every kind in and to all of the results and proceeds (including, without limitation, photography, filming and sound recordings) arising out of the use of the Vehicle ***in connection with the Production*** shall be solely owned in perpetuity, throughout the universe, by any means, devices, or methods, now known and unknown and in any media, now known and unknown, by Producer and its successors and assigns, and neither Lessor (the Plaintiff) or any of its employees, agents or affiliates or other party now or hereafter having an interest in said Vehicle shall have any right of action, including without limitation any right to injunctive relief against Producer, its successors, assigns and/or any other party arising out of any use or non-use of said photography, filming and/or sound recordings.  Neither Producer, nor its successors, assignees or licensees shall be obligated to make any actual use of any photography, recordings, depictions or any

COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF

other results or proceeds from use of the Vehicle in any motion picture or otherwise."

*See* Exhibit D, ¶ 5, entitled "RIGHTS" (***emphasis added***).

35.     The point cannot be emphasized enough:  at every stage of Defendant Pixar's interactions with the Plaintiff, including but not limited to the contract attached hereto as Exhibit D, "the Production" was defined as Defendant Pixar's limited use of the Vanicorn (and any and all photography, video and sound recording, etc., on the day thereof) for the Pixar one day music festival and activity day for Pixar employees on September 14, 2018.  *See* Exhibit D, ¶ preamble; *see also* Exhibit C.

36.     Therefore, in September 2018, the Plaintiff produced the Vanicorn as required pursuant to the provisions of Exhibit D, Defendant Pixar paid the Plaintiff a confidential sum of money for so doing, the Plaintiff's Vanicorn was photographed and/or filmed countless times on the day of the Pixar event on September 14, 2018 by Pixar employees and their friends and family members, and upon information and belief, a good time was had by all – until in or around May 31, 2019.

37.     In or around May 31, 2019, the Plaintiff discovered that Defendant Pixar was producing a 3D computer animated motion picture, entitled "Onward," produced by Defendant Kori Rae, distributed by Defendant Walt Disney, and featuring the voices of noted actors such as Tom Holland, Chris Pratt, Julia Louis-Dreyfus, and Octavia Spencer (hereinafter "Onward").

38.     In or around May 31, 2019, the Plaintiff discovered that Onward is about two blue elves, named Ian and Barley Lightfoot, who are searching for a magical way to reunite themselves with their dead father.

39.     In or around May 31, 2019, the Plaintiff discovered that in pursuit of their goal, Ian and Barley Lightfoot use the services of a third character in the film named Guinevere, which is a tremendously cool, dark blue and/or purple 1972 Chevrolet G10 van with a red interior, and a big mural of a unicorn on its side, and that is clearly a direct copy and/or visual duplication and/or

COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF

doppelgänger of the Plaintiff's Vanicorn, down to the very same year, make and model. *See* Defendants' promotional advertisement for Onward, a true and correct copy of which is attached hereto and incorporated herein as Exhibit F.

40.     As set forth in a pictorial comparison created by the Plaintiff and published on her Instagram account on or about May 31, 2019, the van named Guinevere in the Defendants' motion picture Onward is a direct copy and/or visual duplication and/or doppelgänger of the Plaintiff's Vanicorn, down to the very same year, make, model, exterior color scheme, interior color scheme, and the exterior mural of a unicorn. A true and correct copy of the Plaintiff's pictorial comparison of her Vanicorn and Guinevere is attached hereto and incorporated herein as Exhibit G.

41.     The Defendants created the character of Guinevere and/or made that character look like the Plaintiff's Vanicorn, and clearly had the ability to do so and/or access to Plaintiff's Vanicorn to subsequently render such a pilfered and unlawful duplication, by virtue of Defendant Pixar's prior rental of the Vanicorn from the Plaintiff, as aforementioned, in September 2018.

42.     Unfortunately, the Defendants' pilfered and unlawful duplication of the Plaintiff's Vanicorn, in the Defendants' visual representation of the Guinevere van character in Onward, violates the Plaintiff's copyright in the Vanicorn.

43.     Prior to May 31, 2019, no Defendant had ever contacted the Plaintiff at any time concerning the use of her Vanicorn for the visual representation of the Guinevere van character in the motion picture Onward.

44.     As aforementioned, on May 31, 2019, the Plaintiff demonstrated the Defendants' unlawful duplication of her Vanicorn as the Guinevere van character, as set forth in Exhibit G.

45.     Three days later, on Monday June 3, 2019, at 5:06 p.m., Defendant Kori Rae telephoned the Plaintiff.

46.     During the course of that telephone call, Defendant Kori Rae introduced herself to the Plaintiff as the producer of Onward, and apologized to the Plaintiff for the theft of the Vanicorn for its use as the Guinevere character.

47.     During the course of that telephone call, Defendant Kori Rae also admitted to the Plaintiff that the Defendants intentionally did not inform her, in neither the prelude to the execution of the contract in Exhibit D nor in the contract itself, that they, in fact, intended to use the Vanicorn as the Guinevere character in Onward, because at that time, the movie had no title, and the Defendants believed they couldn't have the Plaintiff sign a non-disclosure agreement without a title, and so the Defendants simply did not reveal their intentions with regard to the Plaintiff's Vanicorn in either their preliminary discussions, nor in Exhibit D itself, and instead, they simply had the Plaintiff sign Exhibit D, a mere rental agreement for the van to be used for a one day music festival and activity day, for Pixar employees, at Pixar's location, on September 14, 2018.

48.     Unfortunately for the Defendants, the contract they themselves created in Exhibit D explicitly prohibits the use of any photographs and/or video and/or other visual representations of the Plaintiff's Vanicorn, taken on the day of September 14, 2018, for any purpose other than that one day event itself.  *See* Exhibit D, ¶ 5, entitled "RIGHTS."

49.     Plaintiff's Vanicorn was subsequently registered with the Copyright Office, with an effective copyright registration date of December 13, 2019 and a registration number of VA 2-183-283.  *See* Copyright Registration, a true and correct copy of which is attached hereto and incorporated herein as Exhibit H.

50.     Neither Onward itself as a motion picture, nor any of the Defendants' advertisements or promotional materials therefor (including but not limited to the Defendants' production, marketing and sale of Onward merchandise and/or toy vans for children and/or an exact life-sized reproduction of the Vanicorn by Pixar's resident car expert, Jay Ward, for use at the 2019 D23

COMPLAINT FOR DAMAGES,
DECLARATORY, AND INJUNCTIVE
RELIEF

Expo, all of which are attached hereto and incorporated herein as <u>Exhibit I</u>), contained any copyright management information (C.M.I.) for the Plaintiff's Vanicorn and, in fact, specifically excluded and otherwise omitted such C.M.I. despite clearly using a pilfered Vanicorn therein.

51.     The Plaintiff's Vanicorn was willfully, intentionally, knowingly and undeniably stolen by Defendants, who then continued to pursue the advertising and/or publication and/or distribution of their infringing motion picture, Onward, and/or its concomitant merchandising as in <u>Exhibit I</u>, without any proper attribution or C.M.I., even after Defendant Kori Rae explicitly apologized to the Plaintiff for the infringement.

52.     As aforementioned, Defendants have intentionally and unlawfully used and reproduced the Plaintiff's Vanicorn, and/or are about to do so, infringing upon the Plaintiff's copyright therein and they are inuring (and/or are about to inure) considerable profits from the same.

53.     In so doing, said Defendants have and/or will be using their infringing motion picture and/or advertisements and promotional and merchandising materials therefor, adding to the public popularity of their own products, and thereby infringing upon Plaintiff's copyright therein and inuring considerable profits from the same.

54.     Upon information and belief, one and/or all of the Defendant(s) own multiple copyrights to the motion picture Onward and/or the advertising and promotion material therefor, containing depictions of the Plaintiff's Vanicorn as Guinevere.

55.     Upon information and belief, no copyright registration submitted by any of the Defendants to the Registrar of Copyrights mentions any derivation in Plaintiff's Vanicorn, as aforementioned.

56.     The Plaintiff did not give her consent, permission or license, in any way, to any Defendant to reproduce her copyrighted Vanicorn, in any fashion, for any use in any of the Defendants' advertisements, promotion materials, or the motion picture entitled Onward.  Defendants reproduced Plaintiff's copyrighted Vanicorn anyway, in violation of 17 U.S.C. § 106(1).

57.     Plaintiff did not give her consent, permission or license, in any way, to any Defendant to specifically include Plaintiff's copyrighted Vanicorn as a derivative work contained in the Defendants' advertisements, promotion materials, or the motion picture entitled Onward. Defendants prepared and published derivative works, based upon Plaintiff's copyrighted Vanicorn anyway, in violation of 17 U.S.C. § 106(2).

58.     Plaintiff did not give her consent, permission or license, in any way, to any Defendant to specifically engage in the public distribution of Plaintiff's copyrighted Vanicorn contained in Defendants' advertisements, promotion materials, or the motion picture entitled Onward, as previously identified, *supra*, or in those remaining to be discovered.  Through the creation, publication, distribution, unlawful registration of copyright and/or sale of such infringing publications and/or motion picture, the Defendants publicly distributed Plaintiff's copyrighted Vanicorn anyway, in violation of 17 U.S.C. § 106(3).

59.     Plaintiff did not give her consent, permission or license in any way to any Defendant to specifically include Plaintiff's copyrighted Vanicorn in any public display (such as the publication, distribution and/or sale of the Defendants' advertisements, promotion and/or merchandising materials and products, or the motion picture entitled Onward, as aforementioned). The Defendants performed and/or displayed Plaintiff's copyrighted Vanicorn anyway, in violation of 17 U.S.C. § 106(4) and/or § 106(5).

60.     No Defendant has compensated the Plaintiff in any fashion whatsoever for the use of her copyrighted Vanicorn in the creation, publication, distribution, unlawful registration of copyright and/or sale of the infringing Defendants' advertisements, promotion and/or merchandising materials and products, or the motion picture entitled Onward and/or use of the Plaintiff's Vanicorn therein.

61.     Upon information and belief, the Defendants' infringing behavior, as aforementioned, has

produced and/or will produce great profits for the Defendants.  None of these profits have been shared, or will be willing shared, with the Plaintiff.

62.     The Defendants knowingly and willfully, directly and/or derivatively, copied without independent creation, the Plaintiff's copyrighted Vanicorn for the specific purpose of infringing upon the Plaintiff's copyright and to unlawfully enrich the Defendants at Plaintiff's expense, as the Defendants never obtained a license from the Plaintiff, let alone her consent or permission, for the specific use of his copyrighted Vanicorn in the infringing Defendant's advertisements, promotion and/or merchandising materials and products, or the motion picture entitled Onward, as aforementioned.

63.     To be absolutely clear, the Plaintiff is not claiming that she possesses a general copyright prohibiting, or in any way forbidding, the rightful ability of any person (or any company, for that matter) to paint a unicorn on the sign of their van.

64.     However, as aforementioned in averments 1 through 63, and by virtue of a comparison of Exhibit F with Exhibit G, Defendants have unquestionably used the Plaintiff's copyrighted Vanicorn to be the Guinevere character in Onward.

65.     Upon information and belief, Onward is scheduled to be released to the general public on or about March 6, 2020 by Defendant Walt Disney.

66.     The Plaintiff's copyrighted Vanicorn is a "work of visual art" as defined in 17 U.S.C. § 101, and is accordingly entitled to any and all protections and/or causes of action and/or damages set forth and applicable under Title 17.


**PLAINTIFF v. DEFENDANTS**
**COUNT I**
**COPYRIGHT INFRINGEMENT – 17 U.S.C. § 501 et. seq.**
**Request for Damages pursuant to**
**17 U.S.C. §§503 through 505**

67.     Averments 1 through 66 are incorporated as though fully set forth herein at

Case No. 20-cv-612

length.

68.     The Defendants' advertisements, promotion and/or merchandising materials and/or products, and/or the motion picture entitled Onward flagrantly infringe upon the Plaintiff's copyrighted Vanicorn, as aforementioned, and therefore each constitute separate, individual instances of copyright infringement.

69.     Upon information and belief, the Defendants falsely copyrighted the Defendants' advertisements, promotion and/or merchandising materials and products, and/or the motion picture entitled Onward as original works, with no credit given for the derivative Vanicorn belonging to the Plaintiff which is included therein.

70.     At no time did any Defendant have a license or authority of any kind to specifically use the Plaintiff's copyrighted Vanicorn in any Defendant's advertisements, promotion and/or merchandising materials and products, or the motion picture entitled Onward.

71.     The express use and inclusion of the Plaintiff's copyrighted Vanicorn in any Defendant's advertisements, promotion and/or merchandising materials and products, or the motion picture entitled Onward, as aforementioned, is evidence of said Defendant's direct access to the same, especially given Defendant Pixar's prior limited purpose rental of the Vanicorn as aforementioned and set forth in Exhibit D; furthermore, the literal reproduction of the Plaintiff's Vanicorn in the aftermath of said limited rental raises a clear inference of such access.

72.     Each Defendant has willfully infringed on the copyright owned by the Plaintiff, which was properly registered with the Copyright Office.  *See* Exhibit H.

73.     Based on the foregoing, and pursuant to 17 U.S.C. § 504, the Plaintiff is entitled to have each Defendant disgorge all profits earned (directly or indirectly) as a result of each Defendant's copyright infringement.

74.     In the alternative to payment of the Defendants' profits, pursuant to 17 U.S.C. § 504,

Plaintiff is entitled to One Hundred Fifty Thousand ($150,000) Dollars per willful infringement after the date of registration of the official copyright at Registration No. VA 2-183-293, dated December 13, 2019).

75.     In addition, pursuant to 17 U.S.C. § 503, Plaintiff respectfully requests this Honorable Court to order the impounding of all copies of any Defendant's advertisements, promotion and/or merchandising materials and products, and/or the motion picture entitled Onward, and to order the Defendants to cease and desist from further distributing the infringing advertisements, promotion and/or merchandising materials and products, and/or the motion picture entitled Onward, in any fashion and to any commercial retailer or distributor of film or in any public and/or private movie theatre and/or via publicly available cable television services and/or any online streaming service (including but not limited to Apple TV, Netflix and/or Disney +), as the same is in violation of the Plaintiff's copyright.

76.     In addition, pursuant to 17 U.S.C. § 505, Plaintiff respectfully requests this Honorable Court to order the Defendants to pay all costs incurred by the Plaintiff in the prosecution of this civil action, including, but not limited to, expert witness fees, costs, and attorney's fees.

**PLAINTIFF v. DEFENDANTS**
**COUNT II**
**COPYRIGHT INFRINGEMENT – 17 U.S.C. § 501 et. seq.**
**Request for Injunctive Relief pursuant to**
**17 U.S.C. §§502**

77.     Averments 1 through 76 are incorporated as though fully set forth herein at length.

78.     The Defendants have willfully infringed on the copyright owned by Plaintiff, which was properly registered with the Copyright Office.  *See* Exhibit H.

79.     The Defendants' infringement, use, sale and/or pirating of the Plaintiff's copyrighted Vanicorn has caused permanent and irreparable harm to Plaintiff.

80.     Unless an injunction is granted barring the Defendants from further distributing, marketing, selling, publishing, or otherwise promoting their infringing advertisements, promotion and/or merchandising materials and products, and/or the motion picture entitled Onward, the Plaintiff will continue to suffer ongoing irreparable harm.

81.     The Plaintiff does not have an adequate remedy at law.

82.     Based upon the clear and willful violations in this case, and the unlawful inclusion of Plaintiff's Vanicorn in the Defendants' advertisements, promotion and/or merchandising materials and products, and/or the motion picture entitled Onward, the Plaintiff has a substantial likelihood of success on the merits.

83.     Greater harm will befall the Plaintiff than the Defendants if the injunctive relief herein is not granted.

84.     Pursuant to 17 U.S.C. § 502, Plaintiff respectfully requests this Honorable Court to grant a temporary and/or final injunction on such terms as this Court deems reasonable to prevent and restrain the infringement of Plaintiff's copyright.

**PLAINTIFF v. DEFENDANTS**
**COUNT III**
**Request for Declaratory Relief pursuant to**
**28 U.S.C. §2201**

85.     Averments 1 through 84 are hereby incorporated as though fully set forth herein at length.

86.     Upon information and belief, the Defendants falsely filed for copyright protection on the Defendants' advertisements, promotion and/or merchandising materials and products, and/or the motion picture entitled Onward, for in preparing and recording said filings, Defendants did not identify the Defendants' publications as being derivative of Plaintiff's copyrighted Vanicorn.

87.     The Defendants falsely filed for copyright protection on the Defendants' advertisements,

promotion and/or merchandising materials and products, and/or the motion picture entitled

Onward knowing that Plaintiff's Vanicorn enjoys copyright protection.  This raises a legal dispute

that can properly be decided by a request for a declaratory judgment that the Defendants'

copyrights in the Defendants' advertisements, promotion and/or merchandising materials and

products, and/or the motion picture entitled Onward are invalid.

88.    The Defendants' copyrights in the Defendants' advertisements, promotion and/or

merchandising materials and products, and/or the motion picture entitled Onward should be

invalidated based upon the Defendants' use of Plaintiff's original Vanicorn for unlawful inclusion

therein.

**PLAINTIFF v. DEFENDANTS**
**COUNT IV**
**Violation of the Digital Millenium Copyright Act**
**17 U.S.C. § 1202 et. seq.**

89.    Averments 1 through 88 are hereby incorporated as though fully set forth herein

at length.

90.    As aforementioned, the Defendants used the Plaintiff's Vanicorn, and then unlawfully

used the Vanicorn for commercial advantage as demonstrated in Exhibits F, G and I and the

Defendants' Onward movie itself, thereby infringing Plaintiff's copyright therein, in violation of

Exhibit H, on multiple occasions, constituting separate, individual infringements.

91.    In so doing, the Defendants excised the Plaintiff's C.M.I. from the Plaintiff's Vanicorn,

presenting Guinevere instead as the product of and/or intellectual property of the Defendants

themselves.  *Compare* Exhibits A, F, G, and I.

**First violation under § 1202(a)**

92.    § 1202(a) proscribes that "No person shall knowingly and with the intent to induce,

enable, facilitate, or conceal infringement (1) provide copyright management information that is

false, or (2) distribute or import for distribution copyright management information that is false.

93.     Defendants' actions and/or inactions, as aforementioned in averments 1 through 92, are in violation of § 1202(a), including but not limited to any Defendant's filings with the Copyright Office and/or the distribution, publication, licensing and/or movie theatre showings of the aforementioned motion picture entitled Onward, and/or accompanying merchandise, as they contain copyright management information that excludes the Plaintiff.

94.     Plaintiff's C.M.I. was intentionally excluded by the Defendants from (including but not limited to) any Defendant's filings with the Copyright Office and/or the distribution, publication, licensing and/or movie theatre showings of the aforementioned motion picture entitled Onward, and/or accompanying merchandise, and the Defendants intentionally published advertisements, promotion and/or merchandising materials and products, and/or the motion picture entitled Onward with the Vanicorn contained therein, knowing (or having reasonable grounds to know) that such exclusion of Plaintiff's C.M.I. would induce, enable, facilitate or otherwise conceal the Defendants' blatant copyright infringement by conveying the false message that the Defendants' works, and the use of the Vanicorn as Guinevere, were of the Defendants' own creation, when in fact they were pilfered from the Plaintiff's copyrighted Vanicorn.

95.     The Defendants' distribution of false copyright management information was, upon information and belief, also individually and separately committed, each with different methods of publication, to each of the Defendants' customers, as aforementioned.

96.     Because of the Defendants' violation of 17 U.S.C. § 1202, and pursuant to 17 U.S.C. §1203(c)(3), Plaintiff respectfully requests statutory damages in the amount of $25,000 for each violation.

97.     Because of the Defendants' violation of 17 U.S.C. § 1202, and pursuant to 17 U.S.C. §1203(b), Plaintiff respectfully requests reasonable attorney's fees and costs.

98.     Maximum statutory damages and attorney's fees are particularly appropriate in light of the

Defendants' theft of Plaintiff's Vanicorn, the infringement of her copyright, and the obvious

exclusion of her copyright management information in the Defendants' unlawful reproductions

and misappropriations of Plaintiff's Vanicorn, which falsely convey that the Vanicorn as

Guinevere contained in the Defendants' advertisements, promotion and/or merchandising

materials and products, and/or the motion picture entitled Onward are of the Defendants' own

creation.

**PLAINTIFF v. DEFENDANTS**
**COUNT V**
**Violation of the Visual Artists Rights Act**
**17 U.S.C. § 106 et. seq.**

99.     Averments 1 through 98 are hereby incorporated as though fully set forth herein

at length.

100.     § 106(a) proscribes that the Plaintiff, as an "author of a work of visual art (1) shall have

the right (A) to claim authorship of that work, and…(3) subject to the limitations set forth in

section 113(d), shall have the right (A) to prevent any intentional distortion, mutilation, or other

modification of that work which would be prejudicial to his or her honor or reputation, and any

intentional distortion, mutilation, or modification of that work is a violation of that right, and (B)

to prevent any destruction of a work of recognized stature, and any intentional or grossly

negligent destruction of that work is a violation of that right."

101.     Pursuant to § 106(a), the Plaintiff has the right as an "author of a work of visual art" to

claim authorship of the Vanicorn as Guinevere contained in the Defendants' advertisements,

promotion and/or merchandising materials and products, and/or the motion picture entitled

Onward.

102.     Pursuant to § 106(a), the Plaintiff has the right to prevent the intentional distortion,

mutilation, or other modification of the Vanicorn, by any Defendant herein, that would be

prejudicial to her honor or reputation, and the Defendants' advertisements, promotion and/or

merchandising materials and products, and/or the motion picture entitled Onward are a violation

of that right.

103.    The Defendants' use of the Vanicorn as Guinevere is a distortion and/or mutilation and/or

modification of the Plaintiff's Vanicorn, because the Defendants' use of the Vanicorn as

Guinevere denigrates this Plaintiff's highly personal and public transubstantiation of her lifelong

artistic interest in unicorns into the Vanicorn (a uniquely San Franciscan work of public, mobile,

automotive art, and a redemptive and validating act of recovery from toxic masculinity and a

former marriage) and which has, instead, been pilfered by the Defendants as a commercial and

corporate conduit for the aspirations of a pair of blue boy elves looking for their father in a mass

marketed Disney film, and was accomplished by the Defendants under wickedly misleading

pretenses, as confessed by Defendant Kori Rae, as aforementioned.

104.    The Defendants' distortion and/or mutilation and/or modification of the Vanicorn as

Guinevere is prejudicial to the Plaintiff's honor and/or reputation, which have been forged by

virtue of her lifelong work as an artist whose creative and artistic productivity is anything but

commercial, corporate, compromised by toxic masculinity, and/or otherwise pilfered (in

substance, character, or quality), unlike the work of the Defendants herein, which denigrates this

Plaintiff's highly personal and public transubstantiation of her lifelong artistic interest in unicorns

into the Vanicorn (a uniquely San Franciscan work of public, mobile, automotive art, and a

redemptive and validating act of recovery from toxic masculinity and a former marriage) and

which Defendants have, instead, pilfered as a commercial and corporate conduit for the

aspirations of a pair of blue boy elves looking for their father in a mass marketed Disney film, and

was accomplished by the Defendants under wickedly misleading pretenses, as confessed by

1    Defendant Kori Rae, as aforementioned.

2    105.    Pursuant to § 106(a), the Plaintiff has the right to prevent any destruction of a work of

3    recognized stature, such as the Vanicorn, and the Defendants' advertisements, promotion and/or

4    merchandising materials and products, and/or the motion picture entitled Onward (constituting as

5    they do an intentional and/or grossly negligent destruction of the Vanicorn) is a violation of that

6    right.

7

8    106.    The Defendants' use of the Vanicorn as Guinevere is an intentional and/or grossly

9    negligent destruction of the Vanicorn, because the Defendant's use of the Vanicorn as Guinevere

10   denigrates this Plaintiff's highly personal and public transubstantiation of her lifelong artistic

11   interest in unicorns into the Vanicorn (a uniquely San Franciscan work of public, mobile,

12   automotive art, and a redemptive and validating act of recovery from toxic masculinity and a

13   former marriage) and which has, instead, been pilfered by the Defendants as a commercial and

14   corporate conduit for the aspirations of a pair of blue boy elves looking for their father in a mass

15   marketed Disney film, and was accomplished by the Defendants under wickedly misleading

16   pretenses, as confessed by Defendant Kori Rae, as aforementioned.

17

18

19                          **PLAINTIFF v. DEFENDANTS**
                                    **COUNT VI**
20                 **Violation of the California Artists Protection Act**
                            <u>**Cal. Civ. Code § 987**</u>
21

22   107.    Averments 1 through 106 are hereby incorporated as though fully set forth herein

23   at length.

24   108.    § 987 of the California Civil Code proscribes that "the physical alteration or destruction of

25   fine art, which is an expression of the artist's personality, is detrimental to the artist's reputation,

26   and artists therefore have an interest in protecting their works of fine art against any alteration or

27   destruction; and that there is also a public interest in preserving the integrity of cultural and

28

artistic creations."

109.    The Plaintiff is an artist as defined by § 987.

110.    The Plaintiff's Vanicorn is fine art as defined by § 987.

111.    § 987(c)(1) further proscribes that "No person, except an artist who owns and possesses a work of fine art which the artist has created, shall intentionally commit, or authorize the intentional commission of, any physical defacement, mutilation, alteration or destruction of a work of fine art."

112.    Defendants' actions and/or inactions, as aforementioned in averments 1 through 111, are detrimental to the Plaintiff's reputation, and constitute a violation and/or multiple violations of § 987(c)(1), as they have altered this Plaintiff's highly personal and public transubstantiation of her personality and her lifelong artistic interest in unicorns into the Vanicorn (a uniquely San Franciscan work of public, mobile, automotive art, and a redemptive and validating act of recovery from toxic masculinity and a former marriage) and which has, instead, been pilfered by the Defendants as a commercial and corporate conduit for the aspirations of a pair of blue boy elves looking for their father in a mass marketed Disney film, and was accomplished by the Defendants under wickedly misleading pretenses, as confessed by Defendant Kori Rae, as aforementioned.

113.    § 987(c)(2) further proscribes that "no person who frames…a work of fine art shall commit, or authorize the commission of, any physical defacement, mutilation, alteration or destruction of a work of fine art by any act constituting gross negligence.  For purposes of this section, the term "gross negligence" shall mean the exercise of so slight a degree of care as to justify the belief that there was an indifference to the particular work of fine art."

114.    Defendants' actions and/or inactions, as aforementioned in averments 1 through 113, constitute a violation and/or multiple violations of § 987(c)(2), because the Defendants' framing

of the Vanicorn as Guinevere, within the four corners of a motion picture and/or its concomitant merchandising of children's toys and/or vans, is prima facie evidence of the Defendants' indifference to the Vanicorn, as they have altered this Plaintiff's highly personal and public transubstantiation of her lifelong artistic interest in unicorns into the Vanicorn (a uniquely San Franciscan work of public, mobile, automotive art, and a redemptive and validating act of recovery from toxic masculinity and a former marriage) and which has, instead, been pilfered by the Defendants as a commercial and corporate conduit for the aspirations of a pair of blue boy elves looking for their father in a mass marketed Disney film, and was accomplished by the Defendants under wickedly misleading pretenses, as confessed by Defendant Kori Rae, as aforementioned.

115.    Pursuant to § 987(e), the Plaintiff herein is entitled to injunctive relief, actual damages, punitive damages (which this Honorable Court shall, in its discretion, select an organization or organization engaged in charitable or educational activities involving the fine arts in California to receive), reasonable attorneys' and expert witness fees, and any other relief which this Honorable Court deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor, and against Defendants, and to order the following relief:

1.    Compensatory damages on each count in an amount to be determined at trial, in an amount in excess of the arbitration limits for the Northern District of California and/or ; and/or,

2.    Disgorgement of Defendants' profits, statutory damages, a declaratory judgment, and/or attorney's fees on Counts I through III; and/or,

3.    An Order for Injunctive Relief as to Count II:

(a)   restraining the Defendants and their commercial retailers, associates and/or partners from promoting, selling, marketing, advertising, shipping, transporting (directly or indirectly) or otherwise moving in domestic or foreign commerce, any and all of the Defendants' advertisements, promotion and/or merchandising materials and/or products, and/or the motion picture entitled Onward and products which infringe upon Plaintiff's copyrighted work; and/or,

(b)   ordering Defendants to forfeit (and/or recall) all of the Defendants' infringing advertisements, promotion and/or merchandising materials and/or products, and/or the motion picture entitled Onward; and/or,

(c)   ordering Defendants to recall or remove any and all of its advertising materials, catalogs, websites, books, posters or brochures or other material which contain the Defendants' advertisements, promotion and/or merchandising materials and/or products, and/or the motion picture entitled Onward that infringe on Plaintiff's work; and/or,

(d)   ordering all of Defendants' commercial retailers to refrain from using or marketing the Defendants' infringing advertisements, promotion and/or merchandising materials and/or products, and/or the motion picture entitled Onward in question; and/or,

(e)   ordering that Plaintiff be remunerated for her work in any future versions sold; and/or,

(f)   providing such other relief as the Court deems just, including costs and attorney's fees; and/or,

4.     A declaratory judgment as to Count III, declaring the Defendants' copyright(s) as they apply to the Defendants' advertisements, promotion and/or merchandising materials and/or products, and/or the motion picture entitled Onward to be invalid as said copyright(s) are derivative of Plaintiff's copyrighted Vanicorn, and Plaintiff is entitled to protection of the copyright.  Plaintiff also seeks all attorney's fees and costs incurred in seeking this declaratory action; and/or,

5.     As to Count IV, judgment against the Defendants, in accordance with 17 U.S.C. § 1203, for statutory damages in excess of $25,000 for each violation, plus reasonable attorney's fees, costs, and such other relief as the Court deems appropriate; and/or,

COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF

1
2

      6.      As to Count V, judgment against the Defendants, plus compensatory and/or statutory damages, in excess of the arbitration limits for the Northern District of California,

3
4

representing said damages, Defendants' profits, interest, costs, attorney's fees, and such other relief as the Court deems appropriate; and/or,

5
6

      7.      As to Count VI, judgment against the Defendants, plus compensatory and/or statutory damages, of the arbitration limits for the Northern District of California, representing

7
8

said damages, Defendants' profits, interest, costs, attorney's fees, and such other relief as the

9

Court deems appropriate.

10

11
                          Respectfully Submitted,

                          JARED WEINSTOCK
12

13
Date:  January 27, 2020         ***/s/ Jared Weinstock***
                          Jared Weinstock, Esquire
14
                          Attorney for Plaintiff Sweet Cicely Daniher
                          750 N. San Vicente Boulevard
15
                          Los Angeles, CA 90069
                          Phone:  (310) 702-1224
16
                          Fax:  (215) 735-1175
                          Email:  jaredweinstock@gmail.com
17

18
                          LAW OFFICE OF J. CONOR CORCORAN, P.C.

19
Date:  January 27, 2020
20
                          J. Conor Corcoran, Esquire
                          Attorney for Plaintiff Sweet Cicely Daniher
21
                          PRO HAC VICE PENDING
                          Pennsylvania Atty. I.D. No. 89111
22
                          1500 John F. Kennedy Boulevard
                          Suite 620
23
                          Philadelphia, PA 19102
                          Phone: (215) 735-1135
24
                          Fax: (215) 735-1175
                          Email:  conor@jcccsq.com
25

26

27

28

1

2

3

**CERTIFICATE OF SERVICE**

4

I, Jared Weinstock Esquire and/or J. Conor Corcoran, Esquire hereby certify that on the

5

27th day of January, 2020, all Defendants were served with the foregoing Complaint via first class

6

7

United States Mail and/or Federal Express to their addresses of record as set forth in the caption

8

of the above captioned matter and averments 6 through 10 of the foregoing Complaint.

9

10

Respectfully submitted this 27th day of January, 2020.

11

JARED WEINSTOCK

12

*/s/ Jared Weinstock*

13

Jared Weinstock, Esquire
Attorney for Plaintiff Sweet Cicely Daniher

14

750 N. San Vicente Boulevard
Los Angeles, CA 90069

15

Phone:  (310) 702-1224
Fax: (215) 735-1175

16

Email:  jaredweinstock@gmail.com

17

LAW OFFICE OF J. CONOR CORCORAN, P.C.

18

19

J. Conor Corcoran, Esquire
Attorney for Plaintiff Sweet Cicely Daniher

20

PRO HAC VICE PENDING
Pennsylvania Atty. I.D. No. 89111

21

1500 John F. Kennedy Boulevard
Suite 620

22

Philadelphia, PA 19102
Phone: (215) 735-1135

23

Fax: (215) 735-1175
Email:  conor@jccesq.com

24

25

26

27

28

Case No. 20-cv-612

COMPLAINT FOR DAMAGES,
DECLARATORY, AND INJUNCTIVE
RELIEF